ALICIA SMITHEY d/b/a SMITHEY's WRECKER SERVICE,

Plaintiff,

v. 408CV207

JIMMY McDUFFIE,

Defendant.

# ORDER

## I. INTRODUCTION

In this 42 U.S.C. § 1983 action, plaintiff Alicia Smithey, owner and operator of Smithey's Wrecker Service, seeks to redress alleged deprivations of her civil rights committed by defendant Jimmy McDuffie, the sheriff of Effingham County, Georgia. Doc. # 1. As an alternative to the constitutional claims, Smithey alleges that McDuffie committed an "unlawful trade regulation." *Id.* at 7-8. Following the close of discovery, McDuffie moved the Court for summary judgment as to all of Smithey's claims against him. Doc. # 14. Smithey has responded to that motion, doc. # 19, and McDuffie has filed a Reply to her Response, doc. # 22.

## II. BACKGROUND

Alicia Smithey has owned and operated Smithey's Wrecker Service ("Smithey's" or "the wrecker service") since 1996. Doc. # 19-1 at 2. Her father Greg Smithey, who originally founded the business, is employed as a driver for the service on an as-needed basis. Doc. # 19 at 1. From 1987 until 8/1/08, the wrecker service participated in the rotation call list for the Effingham County Sheriff's Office. *Id.* Pursuant to this rotating call list, when a vehicle needs towing, and its driver or owner does not request a particular wrecker service, the deputy sheriff on the scene contacts a sheriff's office dispatcher, who in turn assigns the job to the wrecker service that is next in line on the list of six approved wrecker services. Doc. # 19-1 at 6.

According to both parties, Alicia Smithey, Greg Smithey, and Sheriff McDuffie enjoyed a pleasant personal and professional relationship until 2006, when Alicia Smithey was involved in an accident while working a tow job to which the sheriff's office had summoned her. *Id.* at 2. According to McDuffie's deposition testimony, the accident occurred because one of his deputies told Alicia Smithey that he would stop traffic so that she could turn around at the scene in order to access the vehicle needing to be towed. Doc. # 14-6 (McDuffie Depo.) at 43. The deputy, however, let a few vehicles pass through while Alicia was preparing to turn around. *Id.* When she attempted the turn, one of the vehicles (a moving company's van) struck her wrecker. *Id.* Sometime after the accident, McDuffie inquired about the cost of the repairs to the wrecker. Doc. # 19-1 at 2-3. Alicia Smithey told McDuffie that the repairs had already been performed, but that "if anything became of the accident, she expected him to 'do what is right and do what needs to be taken care of because [his] officer was at fault.'" *Id.* at 3. McDuffie asked Smithey to let him know if there was anything he could do. *Id.* at 2.

Smithey was ultimately sued by the moving company. *Id.* at 3. Her insurance carrier denied the claim, saying that she did not have insurance coverage. *Id.* at 3. Greg Smithey then requested that the sheriff's carrier pay for the damage to the moving company's vehicle. Doc. # 14-6 at 43.

McDuffie contacted his carrier and discovered that his deputies had only filed one of the two necessary statements with the insurance carrier. *Id.* Despite being told that the carrier had already denied the claim, McDuffie immediately sent the missing statement to the carrier. *Id.* at 44. Unfortunately, the sheriff's insurance carrier did not change its decision to deny the claim. *Id.* at 45. McDuffie deposed that when Greg Smithey complained to him about the denial of the claim, McDuffie explained to him that "there was nothing [McDuffie] could do about it, [because he] could[] [not] write [Greg Smithey] a check for those damages," and he said that he advised Greg Smithey "to contact an attorney, [and] to let the attorney file a civil action against the County." *Id.* at 45. Thereafter, Alicia Smithey failed to respond to the moving company's lawsuit, and a default judgment was entered against her. *Id.*

Alicia Smithey contends that the claim was denied because McDuffie did not provide his insurance carrier with sufficient information regarding the accident. Doc. # 19-1 at 4. In her opinion, McDuffie did not handle the situation properly because he ultimately did not "take responsibility [despite the fact that] he did [so] originally." *Id.* In her deposition, Alicia Smithey stated that she believed that the sheriff had done her "wrong." Doc. # 14-4 (Alicia Smithey Depo.) at 42. Greg Smithey also deposed that he started harboring "ill feelings" because of the way the sheriff handled the accident. Doc. # 14-5 (Greg Smithey Depo.) at 19. Greg began expressing his feelings to others in the community, telling them that he did not believe in the sheriff anymore and that he could not believe what the sheriff had done. Doc. # 19-1 at 4.

Thereafter, Greg Smithey expressed his feelings directly to McDuffie, stating that he believed the sheriff had done his daughter wrong, and that he felt it would be best if he and McDuffie did not speak to each other anymore. *Id.* at 5. Greg also told the sheriff that the two sheriff's office employees who had been involved in handling the accident were "no good" and should be fired. *Id.* In his deposition, Greg admitted that he possibly also said "something to the effect that [the two employees] were both no good, sorry mother f---ers." Doc. # 14-5 at 24. One employee was the officer on the scene of the accident involving Smithey and the moving company, while the other employee had provided a statement to the sheriff's office's insurance carrier. Doc. # 19-1 at 5.

Still irritated, Greg also posted comments regarding his displeasure with the sheriff on an internet forum called "Effingham Now." *Id.* In his deposition, Greg admitted that he "probably" posted a comment stating that the particular sheriff's office employee who provided a statement to the insurance carrier should be placed on the Georgia Bureau of Investigation's list of sex offenders. Doc. # 14-5 at 25. Later in his deposition, however, he denied making the posting. *Id.* In her deposition, Alicia Smithey stated that she used a pseudonym to post a comment about the accident in which she had been involved. Doc. # 14-4 at 52. Additionally, Alicia stated that she had to change her father's password for the Website in order to make him stop posting. *Id.* at 54-55.

In the 2008 election year, McDuffie was challenged by Rick Gossett for the sheriff position. Doc. # 19-1 at 5. Alicia Smithey began campaigning on behalf of Gossett from the outset of his campaign, in January 2008. *Id.* at 7. Greg Smithey also actively supported Gossett. Doc. # 14-5 at 17. Alicia Smithey placed campaign signs supporting Gossett at her place of business and on her tow truck, attended campaign parties, and went door-to-door handing out campaign information. Doc. # 14-4 at 46.

2

Alicia Smithey admits that she said "negative [things] about [Sheriff McDuffie]" during the campaign, including while she was working with sheriff's deputies at tow scenes, but she claims that she is unable to remember any specific statements she made. *Id.* at 45-46, 53. Greg deposed that he told people that he was supporting Gossett because McDuffie had "done [his] daughter wrong." Doc. # 14-5 at 18.

Sheriff McDuffie began receiving complaints from his deputies regarding employees of Smithey's Wrecker Service making critical and unflattering comments about McDuffie and other sheriff's office personnel while the deputies and employees of Smithey's were working together at tow scenes. Doc. # 19-1 at 8. Apparently, some deputies agreed with the statements, while others complained to the sheriff about having to listen to them. *Id.* at 9.

According to McDuffie, some of the wrecker services on the rotation list frequently complained that there were too many wreckers on the list. Doc. # 19-1 at 6. They believed that each wrecker service was therefore not reaping a satisfactory amount of towing business by being on the rotation list. *Id.*

In April or May 2008, McDuffie consulted an attorney about the possibility of removing Smithey's from the rotation list, due to the deputies' complaints and the internet postings, as well as a desire to decrease the number of wreckers on the list. Doc. # 14-6 at 58-60. Based on the discussion with the attorney, McDuffie determined that he had the right to remove Smithey's. *Id.*

In mid-July 2008, McDuffie defeated Gossett in the election, securing his position as sheriff for another term. Doc. # 14-4 at 49. On 7/22/08 Sheriff McDuffie informed Alicia Smithey via letter that, effective 8/1/08, Smithey's Wrecker Service would be removed from the wrecker rotation list. Doc. # 19-1 at 10. In the letter, McDuffie stated that Smithey's wrecker was being removed "due to economic shortfalls in our economy," and in response to the complaints that too many wreckers were being permitted to participate in the rotation list. Doc. # 14-6 at 57. In his deposition, however, McDuffie conceded that the primary reason he removed Smithey's Wrecker Service was because he was having "problems" with the Smitheys. *Id.* at 58. McDuffie elaborated that the "problems" he was referring to were the negative comments by Smithey's Wrecker Service's employees to the deputies while at incident sites and the deputies' complaints regarding those comments, as well as the postings on the internet forum and "all the past history." *Id.* McDuffie deposed that he had seen printouts of the internet forum postings signed by Greg Smithey, including the one regarding the need to place one sheriff's office employee on the sex offender list. *Id.*

Sometime after Smithey's Wrecker Service was removed from the rotation list, another local wrecker service applied to be added to the list. *Id.* at 12. McDuffie rejected the application, however, stating that there were already enough wreckers on the list. *Id.*

Following the removal of her wrecker service from the rotation list, Alicia Smithey filed the present lawsuit against McDuffie. Doc. # 1. In Count I, she alleges that "[t]he retaliatory and malicious action of McDuffie was an egregious abuse of governmental power and violated Smithey's right to freedom of speech and freedom of association guaranteed under the First Amendment of the United States Constitution." *Id.* at 6. In Count II, entitled "Substantive Due Process," Smithey alleges that McDuffie's conduct "was an egregious abuse of governmental power and violated Smithey's right to due process under the

3

Fourteenth Amendment of the United States Constitution." *Id.* at 7. Finally, in Count III, which Smithey designates as an "alternative claim," Smithey alleges that McDuffie's statement that he removed her wrecker service from the rotation list for "economic reasons," indicated that McDuffie intended "to adjust the economics in the local towing market and bolster the market share of towing companies other than Smithey's Wrecker Service for local towing business." *Id.* at 7-8. According to Smithey, because McDuffie "has no legal authority to regulate the economics of the automotive towing industry in Effingham County," this action constituted an "unlawful trade regulation." *Id.* at 8.

Smithey seeks declaratory and injunctive relief ("restor[ing] Smithey's Wrecker Service to the ... wrecker rotation list"), as well as compensatory damages of at least $100,000, punitive damages of at least $500,000, and reasonable attorney's fees and costs. *Id.* at 8-9.

## III. <u>ANALYSIS</u>

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." F.R.Civ.P. 56(c). The moving party is "entitled to a judgment as a matter of law" when the nonmoving party fails to make a sufficient showing on an essential element of her case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The mere existence of a scintilla of evidence is insufficient; rather, there must be evidence on which reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

McDuffie presents numerous grounds for summary judgment as to all of Smithey's claims against him. Doc. # 14-2. The Court will address each in turn.

### A. Substantive Due Process

McDuffie avers that, for several reasons, Smithey's substantive due process claim, which is based on her removal from the wrecker-rotation list as a result of her exercise of her First Amendment rights, is not recognized in the Eleventh Circuit.

Urging that her substantive due process claim is in fact recognized in this circuit, Smithey quotes the Eleventh Circuit as having held that "[a] violation of a public employee's right to substantive due process occurs when an employer deprives the employee of a property interest for an improper motive and by means that [are] pretextual, arbitrary and capricious, regardless of whether or not a hearing was held." Doc. # 19 at 13 (citing *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994)). Smithey urges that her removal from the rotation list constituted an employment-like "loss as the result of an improper motive (infringement of free speech) by means that were pretextual (contention by the Sheriff that the removal from the rotation list was for 'economic shortfalls')." *Id.* at 13-14. What Smithey neglects to address, however, is that, following the *McKinney* court's statement of the then-existing law in the Eleventh Circuit, the court dedicated the remainder of its opinion to discussing and ultimately holding that, based on Supreme Court precedent, the above-stated rule was no longer proper. Instead, the court explained, "only *procedural* due process claims are available to pretextually terminated employees. Thus, we conclude that our prior decisions, which granted pretextually terminated employees section 1983 causes of action premised on substantive due process violations, are

contrary to Supreme Court jurisprudence...." 20 F.3d at 1560 (emphasis added). In urging upon the Court such an incomplete and misleading excerpt of *McKinney* in an attempt to keep one count of the Complaint alive, Smithey's counsel not only risked tarnishing his professional reputation, but also the possible imposition of Rule 11 sanctions. *See Ferron v. West*, 10 F. Supp. 2d 1363, 1371 (S.D. Ga. 1998) ("A court may, upon motion or its own initiative, impose an appropriate Rule 11 sanction upon lawyers who sign misleading pleadings. [T]he brief authored by plaintiff's counsel crossed the line from zealous advocacy to distortion by omission. The Court strictly enforces its zero-tolerance policy against frivolous and misleading filings."). Counsel is strongly warned against presenting such misleading briefs and pleadings to this Court – or any court – again. Next time he could face harsher consequences than losing an unsupported argument on summary judgment.

Furthermore, as emphasized by McDuffie, Smithey's substantive due process claim is barred because it is duplicative of her First Amendment claim, which is based on the same conduct that she alleges deprived her of due process. In *Beckwith v. Daytona Beach Shores, Fla.*, the Eleventh Circuit addressed the effect of *McKinney* in the context of a claim by an employee that he was terminated for exercising his First Amendment rights. 58 F.3d 1554 (11th Cir. 1995). The *Beckwith* court explained:

> A state employee does not need a protectable property interest, or any other state-created right, in order to maintain a First Amendment retaliatory discharge claim. ... [A]lthough a retaliatory discharge claim by a state employee involves the denial of the state-created benefit of employment, the right upon which a retaliatory government employment decision infringes is the right to free speech, not the right to a job. [Thus,] *McKinney* has no impact on such claims. ... Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, *'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'*

*Id.* at 1562-63 (footnotes omitted) (emphasis added).

In conclusion, Smithey cannot proceed on her claim that her alleged pretextual termination from a form of state employment violated her substantive due process rights, as such claims are no longer recognized in this circuit. Additionally, as described in *Beckwith*, the appropriate vehicle for her claim is the First Amendment. She therefore must bring her claim pursuant to that amendment alone and she cannot also seek relief for the same claim under the Fourteenth Amendment's substantive due process guarantee.

For the foregoing reasons, Smithey's claim that McDuffie violated her First Amendment rights by removing her service from the wrecker-rotation list must be brought as just that – a First Amendment-based claim – and not as a substantive due process claim via the Fourteenth Amendment. She thus presents her claim properly in Count I of her complaint, and, as a result, her substantive due process claim in Count II must be dismissed.

### B. First Amendment Retaliation

The Supreme Court has recognized the right of private companies providing services to the government not to be retaliated against by the government on the

5

basis of their exercise of free speech, expression, or association. *See Bd. of County Comm'rs, Wabaunsee County v. Umbehr*, 518 U.S. 668 (1996) (placement on a municipal tow list is one type of benefit that cannot be denied a person because of his First Amendment activity); *O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712 (1996) (same). Smithey claims McDuffie removed her wrecker service from the rotation list in retaliation for her and her father's First Amendment activities in support of McDuffie's challenger in the election. Doc. # 1 at 6.

A governmental entity may not take adverse action on account of a service provider's political affiliation and activity. *O'Hare Truck Serv., Inc.*, 518 U.S. at 718-19 (citing *Branti v. Finkel*, 445 U.S. 507, 515 (1980)). Because Smithey's claim alleges retaliation for her active support of a specific candidate (a claim which involves speech "intermixed with a political affiliation requirement"), the Court applies the balancing test provided by *Pickering v. Bd. of Educ.* and its progeny (as opposed to the "categorical" approach set forth in the *Elrod-Branti* line of cases, which is typically applied to cases involving a termination based on a "raw test of political affiliation"). *Id.* at 719-20 (discussing *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968), *Elrod v. Burns*, 427 U.S. 347 (1976) and *Branti*, supra); *see also Stough v. Gallagher*, 967 F.2d 1523, 1527 (11th Cir. 1992) (applying *Pickering* test where sheriff demoted deputy who had not only supported his opponent, but also had delivered public speeches in support of opponent). The *Pickering* test provides a case-by-case balancing approach, which "allow[s] the courts to consider the necessity of according the government the discretion it requires in the administration and awarding of contracts over the whole range of public works and the delivery of governmental services." *O'Hare Truck Serv., Inc.*, 518 U.S. at 719-20. Thus, to establish a claim of retaliation, Smithey must show that (1) the conduct at issue is protected by the First Amendment; (2) she suffered an adverse decision; and (3) a causal connection exists between the protected activity and the adverse determination, so that it can be said that the protected activity was a substantial or motivating factor in the determination. *Bryson v. City of Waycross*, 888 F.2d 1562, 1565 (11th Cir. 1993) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)). If Smithey meets her burden, McDuffie may nonetheless escape liability under the fourth step of the *Bryson* analysis if he can prove by a preponderance of the evidence that he would have removed Smithey's from the towing list for an independent, sufficient reason, even had the Smitheys not supported Gossett.[1] *Id.* (citing *Mt. Healthy*, 429 U.S. at 286).

1. *Stating a Claim for Retaliation*

The parties do not dispute the fact that campaigning on behalf of (or otherwise supporting) a political candidate is an activity protected by the First Amendment. Nor do they dispute that Smithey suffered an adverse decision – the removal of her wrecker service from the rotation list. Thus, the Court turns to the issue of causation.

Although the Supreme Court has cautioned that the mere fact that an adverse action was taken after an employee exercised her First Amendment rights is not enough, by itself, to establish a *prima facie*

---

[1] The Court will consider Greg Smithey's speech (in addition to that of Alicia, as the named plaintiff), since he was an employee of the wrecker service (in fact, its *only* employee other than Alicia), and since he actively involved himself in the controversy following the accident and the insurance denial. *See* doc. # 14-6 at 46 (most of McDuffie's discussions about the accident and any potential liability of the sheriff's office to Smithey's Wrecker Service were with Greg Smithey, not Alicia).

6

case, *see Umbehr*, 518 U.S. at 685, a plaintiff need not produce direct evidence of discriminatory treatment to establish a *prima facie* case; circumstantial evidence may, at times, suffice. Here, Smithey has not presented direct evidence, but she urges that the temporal proximity between her campaigning for Gossett and her removal from the list provides adequate circumstantial evidence of causation. McDuffie, who knew that the Smitheys had actively supported Gossett in the campaign, sent the letter removing the service from the rotation list on 7/22/08, one week after defeating Gossett. *See Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 745 (11th Cir. 1996) ("Where termination closely follows protected activity, it is usually reasonable to infer that the activity was the cause of the adverse employment decision."). The causation issue is a close call here.

The Court, however, need not make a firm determination on the causation issue because, even if Smithey has met her burden of a *prima facie* case, McDuffie has sufficiently rebutted that showing by clearly demonstrating that he would have made the same decision even if the Smitheys had not supported Gossett. *See Stanley v. City of Dalton*, 219 F.3d 1280, 1292 (11th Cir. 2000) ("[A] defendant may still obtain summary judgment on the affirmative defense set out in *Bryson*'s fourth step, even if a plaintiff presents a factual issue on the third prong. [The defendant] may still prevail by showing that there is no question of fact as to whether he would have taken the same action in the absence of speech.").

2. *Independent and Sufficient Reason for Removal*

To satisfy the fourth step of the *Bryson* analysis, McDuffie must show "by a preponderance of the evidence that [he] would have reached the same decision as to [Smithey's] even in the absence of" the Smitheys' support of Gossett. 888 F.2d at 1565; *Mt. Healthy*, 429 U.S. at 287. "To fulfill this burden, [McDuffie] must show that [a] legitimate reason would have motivated [him] to make the same employment decision" (to remove Smithey's from the rotation list). *Stanley*, 219 F.3d at 1293 (citing *Holley v. Seminole County Sch. Dist.*, 755 F.2d 1492, 1505 (11th Cir. 1985)). Stated another way, he must show that "in light of [his] knowledge, perceptions, and policies at the time of the [removal]," he would have removed Smithey's regardless of the Smitheys' campaigning for Gossett. *Umbehr*, 518 U.S. at 685.

In his deposition, McDuffie admitted that, despite what he stated in the notification letter to Smithey, an economics-based need to decrease the number of wreckers on the rotation list was not the primary factor that motivated his decision to remove Smithey's. Doc. # 14-6 at 57-58. He admitted that he actually decided to remove Smithey's because of the "problems" he and some of his deputies had been having with the Smitheys, in particular Greg Smithey's pre-campaign blog postings and Greg and/or Alicia Smithey's negative and disruptive comments at tow sites. *Id.* He explicitly stated that the removal decision was not based on the Smitheys' comments during the election campaign, but was due to the Smitheys' complaints and name-calling "in general." *Id.* at 75. The Court, however, must ensure that basing the removal decision on Greg and Alicia Smithey's speech would have been proper.

As an initial matter, the parties have not provided the Court with much in the way of substantive examples of the speech at issue here. Nonetheless, the Court proceeds with its analysis based on the context and generalizations about the speech, which have been provided by both parties'

7

deposition testimonies, and about which there is no substantial factual dispute.

As with political patronage or affiliation, a governmental entity may not demote or discharge a public employee or independent contractor in retaliation for protected speech. *See Bryson*, 888 F.2d at 1565 (citing *Rankin v. McPherson*, 483 U.S. 378 (1987)); *Umbehr*, 518 U.S. 668 (1996)). However, the government is afforded some latitude in regulating the speech of its public employees and independent contractors. "[F]or a government employee's speech to have First Amendment protection, the employee must have (1) spoken as a citizen and (2) addressed matters of public concern." *Boyce v. Andrew*, 510 F.3d 1333, 1341 (11th Cir. 2007).

The issue of whether the speech involved a matter of public concern "is a question of law for the judge, who must consider the purpose of the employee's speech by analyzing 'the content, form, and context' of the statement." *Johnson v. Clifton*, 74 F.3d 1087, 1092 (11th Cir. 1996) (citing *Bryson*, 888 F.2d at 1556-66). To fall within the realm of the "public concern," an employee's speech must "relat[e] to a[ ] matter of political, social, or other concern to the community." *Connick v. Meyers*, 461 U.S. 138, 146 (1983). Absent extraordinary circumstances, however, First Amendment protection remains unavailable when "a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest...." *Id.* at 147. In addition to considering the content, form, and context of the statements, the Court "may consider the employee's attempts to make the concerns public, along with the employee's motivation in speaking." *Morgan*, 6 F.3d 750, 754 (11th Cir. 1993) (citations and footnote omitted).

Here, the speech by Greg and Alicia Smithey did not constitute a matter of public concern, but concerned only a matter of personal interest between the parties. Both parties make clear in their depositions that the speech centered upon the opinion that McDuffie and certain members of his staff had not properly handled the filing of an insurance claim following an accident that had occurred while Smithey's wrecker was working a tow scene that was also being attended to by the sheriff's office.

Thus, the Smitheys' speech focused solely on McDuffie's shortcomings in their eyes following a matter involving and affecting only their wrecker service. Their disappointment was not a matter of public concern. The statements were, at best, mere criticisms of internal management actions that had affected the wrecker service (and Alicia and/or Greg) alone. Their opinions and criticisms bore no relevance to the public's evaluation of the performance of the sheriff's office. For instance, the conduct at issue did not involve any public safety issues or the way the sheriff conducted his office with regard to society at large. *See, e.g., Fikes v. City of Daphne*, 79 F.3d 1079, 1084 (11th Cir. 1996) (question of whether police officers are properly performing their duties, as a public safety issue, must be considered an issue of political or social concern); *Moore v. Kilgore*, 877 F.2d 364, 370 (5th Cir. 1989) (a firefighter's speech to the news media as president of a firefighter's union, criticizing the department's insufficient manpower related to a matter of public concern because "[t]he public, naturally, cares deeply about the ability of its Fire Department to respond quickly and effectively to a fire"). As a result, it cannot be said that the content, form, and context of the Smitheys' speech support a finding that the speech was a matter of public concern.

Likewise, the *purpose* of the Smitheys' speech was not to raise issues of public concern. According to Greg Smithey and Alicia Smithey's own testimony, their critical feelings and speech about McDuffie were prompted only by their personal belief that he had mishandled the accident situation (by allegedly not providing his insurance company with both of the necessary incident reports). In her deposition Alicia Smithey stated that prior to the accident, she had had a good relationship with the Sheriff, but that after the accident and the denial of the insurance claim, she felt that the sheriff had done her "wrong" because he had not ensured that the insurance claim was properly filed. Doc. # 14-4 at 42. Additionally, the Court considers the fact that most of the speech was not communicated to the public at large, but was specifically directed at McDuffie and his deputies.[2] The lack of any fact-infused utterances by Greg or Alicia demonstrates that the point of their speech was not to bring the particular alleged wrongdoing to light or to put at public issue the quality of the sheriff's performance of his duties, which even then may not have been of public concern. *See Gomez v. Texas Dept. of Mental Health*, 794 F.2d 1018, 1022 (5th Cir. 1986) ("Whatever the significance of Gomez' speech ..., he was not seeking to alert the public to any actual or potential wrongdoing or breach of public trust...."). The Smitheys' utterances constituted little more than mud-slinging and an attempt to get their angry feelings off their "chests." *See Boyce*, 510 F.3d at 1344 (A "public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run.").

Even the speech that Greg and Alicia Smithey made during the election campaign was based upon their personal disdain for McDuffie following the insurance issue, not upon politics. *See Joyner v. Lancaster*, 815 F.2d 20, 23-24 (4th Cir. 1987) (finding that, in speaking and campaigning in support of the sheriff's challenger, plaintiff-deputy, who expected a promotion if the challenger prevailed, had "acted in substantial part in his own interest," and the speech was therefore of dubious public interest). The Court will not consider the Smitheys' speech during the campaign to be separate and protected political speech, as such speech was not prompted by a pure belief that Gossett was a better candidate for the sheriff position. Quite to the contrary, the Smitheys' decision to support Gossett (who was the only candidate challenging McDuffie) appears to have been prompted almost exclusively by their hostility toward the sheriff after the insurance coverage issue. Campaigning for Gossett provided the Smitheys with a new outlet for disparaging McDuffie, an activity that had begun almost a year and a half before the campaign, and increased in intensity during the campaign. *See* doc. # 14-6 at 76 (explaining that the Smitheys' negative comments started around the time of the insurance carrier's nonpayment of the claim); *id.* at 42 (explaining that Greg Smithey's negative and angry comments about the sheriff's office – which were made at tow sites – became increasingly common as the election drew closer). Simply because

---

[2] The fact that some speech was presented in a public forum – the internet board – does not compel this Court to deem the speech a matter of public concern. Alicia Smithey deposed that she made one posting about the accident, but she did not describe the content or context of the posting. Doc. # 14-4 at 51-52. Greg Smithey, who made several postings on the forum, admits that he "probably" authored one posting that attacked one of the officers who had been on the scene of the accident involving Smithey, alleging he was a child molester – purely personal and intangible opinions, since the officer had never been formally accused or convicted of such a crime. Doc. # 14-5 at 25.

some of the speech coincided temporally with the election and the Smitheys' support of Gossett as a candidate does not automatically transform the speech as a whole into a public concern.

For the foregoing reasons, the speech at issue did not constitute speech protected under § 1983, and therefore it could have provided a legitimate basis for McDuffie to remove Smithey's from the rotation list.

McDuffie additionally indicated that a need to thin the rotation list was a secondary consideration for him in deciding to remove Smithey's.[3] *See id.* at 64 (discussing McDuffie's belief that the list is easier to administer and manage with fewer services on it). He testified that some of the wreckers on the list had voiced their desire that the list be cut back. *See* doc. # 19-1 at 6. He said that he chose Smithey's as the best (and only) candidate for elimination because he had not experienced problems with any of the other wrecker services. Doc. # 14-6 at 58.

Thus, McDuffie has shown that he had two objective reasons to remove Smithey's from the list. The Court still must determine, however, whether the Smitheys' unprotected speech and the ensuing problems in fact motivated McDuffie's decision. This determination requires a fact-intensive examination of the particular evidence in the record. *Stanley*, 219 F.3d at 1293-94. The fact that the employer must show he was motivated by a non-protected factor, however, does not mean that an employer could not have also relied in some part on the employee's protected activity in making his adverse decision. *See Harris*, 99 F.3d 1078 (finding no liability despite the fact that the employer had relied partially upon protected speech in taking an adverse action).

McDuffie testified that the two above-discussed reasons drove his decision to remove Smithey's. *See* doc. # 14-6 at 60. He also testified explicitly that his decision was not motivated by the Smitheys' campaigning on Gossett's behalf. *Id.* at 75. Smithey has not controverted this testimony. That is, she has not presented evidence upon which a reasonable jury could conclude that, despite his explicit testimony, McDuffie actually would not have removed Smithey's from the list had she not supported Gossett. For instance, she has not presented evidence that other wrecker services (or any other type of independent contractor or sheriff's office employee, for that matter) who did not support Gossett but engaged in some sort of similar misbehavior were not removed as Smithey's was.[4] Nor, for instance, has she presented evidence that McDuffie did at some point indicate that he was removing her to punish or otherwise retaliate against her on account of her campaigning for Gossett.

Thus, McDuffie has provided more than one acceptable basis for his removal of Smithey's from the wrecker rotation list, and he has testified that those bases alone motivated that decision. Smithey has not presented evidence to call that testimony into doubt, nor any evidence that would otherwise support a conclusion to the contrary. As a result, the Court finds that McDuffie has sufficiently proven that he would have made the decision to remove

---

[3] This assertion is supported to some extent by the fact that, several months after removing Smithey's, McDuffie removed two other companies from the list, and he rejected a later applicant. Doc. # 14-6 at 24-25. At the time of the summary judgment motion, only three tow services remained on the list, which McDuffie claims is more manageable. *Id.* at 28.

[4] Quite to the contrary, in her deposition, Alicia Smithey conceded that, although some deputies and other employees of the sheriff's office actively supported Gossett, none of those Gossett supporters were terminated from the sheriff's office during or after the campaign. Doc. # 14-4 at 47.

Smithey's even if the Smitheys had not campaigned for Gosset's election in 2008. As such, he is entitled to summary judgment on this claim.

### D. Unlawful Trade Regulation

The only claim that remains is Count II of Smithey's Complaint, which she labeled an "alternative claim" for "unlawful trade regulation." Doc. # 1 at 7-8. She claims that McDuffie acted improperly when he stated in his letter to her that he was removing Smithey's Wrecker Service from the list for "economic" reasons, because he was without "legal authority to regulate the economics of the automotive towing industry in Effingham County." *Id.* at 8. She cites no law in support of this claim, but she implies earlier in her complaint that the claim is brought under state law. *See id.* at 1 (explaining that the Court has jurisdiction over the case pursuant to 28 U.S.C. § 1331 since it includes civil claims arising under the U.S. Constitution, and also "request[ing] that this Court exercise its pendant jurisdiction over her state law claim," where only enumerated claim not based explicitly on the Constitution is Count III, for "Unlawful Trade Regulation"). Smithey neglected to brief this claim despite the fact that McDuffie moved for summary judgment as to all of her claims. *See* doc. # 19 at 17 (asserting her position that "any argument on Count II ... is premature" and requesting "leave to submit argument on Count II in the event that summary judgment is granted on Counts I and II). Smithey thus has not presented any federal basis for the claim. Even if the claim actually is based upon federal law, however, the claim nonetheless cannot survive summary judgment.

The Court has been unable to find, nor has Smithey provided, any case law authorizing a plaintiff to decline the responsibility of presenting and articulating an argument on a claim upon which the defendant has moved for summary judgment. Generally, the failure to respond to the movant's argument on summary judgment constitutes a waiver of any argument on the claim. *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) ("[F]ailure to brief and argue [an] issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."); *Seaboard Cost. Co. v. The Weitz Co, LLC*, 2009 WL 3855185, at *5 (S.D. Ga. 11/17/09) ("Seaboard's failure to oppose summary judgment on these counts demonstrates abandonment of these claims. It is well-settled in this Circuit that 'the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.'") (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995)).

Smithey is not at liberty to hand-pick which battles she wishes to fight at this time. By moving for summary judgment and presenting argument as to each and every claim Smithey included in her Complaint, McDuffie placed upon her a burden to support those claims, even the ones she set forth as "alternative" claims.[5] Simply

---

[5] To the extent Smithey declined to brief her "alternative claim" because she was concerned about presenting inconsistent positions in her brief, Smithey should look to her own Complaint for reassurance that parties routinely present inconsistent claims in the alternative. Just as she presented inconsistent claims in her Complaint, so may she present evidence and argument to support those claims. Out of precaution, she could have indicated (if necessary) that certain arguments were being made for the sake of one particular claim only. And since, logically, she should only have one version of the facts to present, her presentation of the facts should not vary depending on the Court's decision on her other claims.

11

indicating that a particular claim is being made "in the alternative" does not give a plaintiff the authority to temporarily shield that claim from a properly-presented summary judgment motion, and to prolong the litigation of her case. Smithey having presented no reasonable grounds for the Court to delay addressing the unlawful trade regulation claim, summary judgment is granted in favor of McDuffie on that claim.

## IV. CONCLUSION

For the foregoing reasons, the Court *GRANTS* Sheriff Jimmy McDuffie's Motion for Summary Judgment as to all three counts of Plaintiff Alicia Smithey's Complaint, doc. # 1. Accordingly, Smithey's Complaint is *DISMISSED WITH PREJUDICE* and the case is now *CLOSED*.

This day of 20 January 2010.

*[signature]*

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA